UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEPOSITORS INSURANCE COMPANY,
A foreign corporation,

                                Case No. 2:22-cv-12629-NGE-EAS

      Plaintiff,                  Hon. Nancy G. Edmunds

v

WILLIAM J. SAMMUT and YVONNE BROWN,
As Personal Representative of the Estate of
James Brown III, Deceased,

      Defendants.

_____/

| | |
|---|---|
| Michael F. Schmidt (P25213) | Elizabeth L. Parker (P51288) |
| HARVEY KRUSE, P.C. | KOSTOPOULOS RODRIGUEZ PLLC |
| Attorney for Plaintiff | Attorney for Defendant William J. |
| 1050 Wilshire Drive, Suite 320 | Sammut |
| Troy, MI 48084 | 550 W. Merrill St., Ste. 100 |
| (248) 649-7800 | Birmingham, MI 48009-1443 |
| (248)649-2316 (fax) | (248) 268-7800 / (248) 268-7801-fax |
| mschmidt@harveykruse.com | liz@korolaw.com |

Neil A. Miller (P25645)
Attorney for Defendant Yvonne Brown
2401 W. Big Beaver Rd., Ste. 100
Troy, MI 48084-3304
(248) 649-0211 / (248) 649-5679 – fax
neil@neilmillerlaw.com

_____/

HARVEY KRUSE — ATTORNEYS & COUNSELORS — A PROFESSIONAL CORPORATION — 1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**<u>NOTICE OF HEARING AND MOTION BY PLAINTIFF DEPOSITORS INSURANCE COMPANY FOR FED.R.CIV.P. 56 SUMMARY JUDGMENT AGAINST DEFENDANTS</u>**

**<u>ORAL ARGUMENT REQUESTED</u>**

PLEASE TAKE NOTICE that on a date and time to be set by the Court, the Plaintiff, Depositors Insurance Company, will move for summary judgment under Fed.R.Civ.P. 56 against defendants and states as follows:

1.     Depositors Insurance Company ("Depositors") filed this suit against William J. Sammut and Yvonne Brown, as Personal Representative of the Estate of James Brown, III, Deceased to obtain a determination that Depositors owes no coverage or duty to defend William J. Sammut in the underlying case filed by Yvonne Brown, as Personal Representative of the Estate of James Brown, III, Deceased v King Custom Design, Inc., Emad Khamo, William J. Sammut, Sammut Properties, LLC and Circle Engineering, Inc., Macomb County Circuit Court Civil Action No. 21-004032-NO (hereinafter referred to as the "underlying action").  (A copy of the complaint in the underlying action is attached hereto as Ex 1.)

2.     Depositors issued a Homeowners Policy to Sammut, Bill and Sammut, Wendy, 60881 Indian Trl., Ray, MI   48096, policy no. HOD 0059502862-4 with a policy period from 06/25/2020 to 06/25/2021.  (A copy of the policy is attached hereto as Ex 2 and is hereinafter referred to as the "Depositors Homeowners Policy").

3.     The Depositors Homeowners Policy specifically excludes liability coverage for any "Business" pursuant to the following exclusion:

**E.     COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others**

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

Coverages **E** and **F** do not apply to the following:

* * * *

2.    **"Business"**

a.    "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".  (Ex 2, p 21 of 28)

4.    The policy defines "Business" as:

3.    "Business" means:

a.    A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

b.    Any other activity engaged in for money or other compensation, except the following;

1)    Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

2)    Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**3)**    The rendering of home day care services to a relative of an "insured".  (Ex 2, p 1 of 28).

\* \* \* \*

5.    The underlying complaint alleges that the underlying plaintiff's decedent, James Brown, III was on the premises of 5495 Gatewood Drive, Sterling Heights "for a ***business purpose*** on January 8, 2021, when he died due to injuries which resulted from a fall caused by the defective and hazardous condition of the premises."  (Ex 1, p 2-3, ¶ 9, emphasis added).

6.    The underlying complaint further alleges that William Sammut, Circle Engineering, Inc. and Sammut Properties, LLC were all "***conducting business*** at 5495 Gatewood . . ."  (Ex 1, p 2, ¶¶ 3, 4, 5, emphasis added).

7.    The underlying complaint further alleges that the defendant William Sammut was at all relevant times "involved in a ***personal property and debris removal project*** at 5495 Gatewood Drive . . . for which he enlisted the help of James Brown, III."  (Ex 1, ¶ 7, emphasis added).

8.    The underlying complaint further alleges that William Sammut "owed to James Brown, III the duty of exercising reasonable care for his safety and to provide James Brown, III with a reasonably ***safe place to work***, to keep ***his work area*** free of foreseeable nuisances, hazards, and dangers . . ."  (Ex 1, p 5, ¶ 25, emphasis added).

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

9.     The underlying complaint further alleges that William Sammut, Circle Engineering and Sammut Properties were in possession of or in control of the premises and breached their legal duties to plaintiff and were negligent in regard to his "***work***" including in one or more of the following ways:

    a. Failing to adequately inspect, evaluate and/or assess ***the work necessary*** . . .

    d. Defendant allowed property and debris removal activities to proceed without ensuring in advance ***that operations could be undertaken*** in a safe manner, and that the subject stairway landing was in a reasonably safe condition;

    e. Failing to inspect Plaintiff's Decedent's ***work area*** to insure that the property and debris removal project could be undertaken safely, in advance of commencement ***of the work***;

    f. Failing to insure that Plaintiff's Decedent had safe ingress and egress to ***his work area***;

    g. Failure to warn Plaintiff of the compromised and dangerous conditions in ***his work area***, including the mezzanine landing . . ." (Ex 2, p 6, ¶ 26, emphasis added).

10.     Depositors has also obtained testimony from William Sammut in an examination under oath (copy attached as Ex 3) pursuant to the Depositors Homeowners Policy Conditions (Ex 3, pp 25-26 of 28), in which William Sammut testified that:

    a.     Circle Engineering was started in 1967 by William Sammut's father as a tool and die shop and had the building at 5495 Gatewood built in 1979. William Sammut and his brother owned the building through Sammut Properties,

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

LLC since 1999.   Both Circle Engineering and Sammut Properties, LLC were owned 50/50 by William Sammut and his brother.  Circle Engineering stopped its operations and stopped paying rent to Sammut Properties in March 2020, and at that point Sammut Properties took possession of the building.  Circle Engineering then wound up its operations and Sammut Properties sold the building and the profits from both Sammut Properties and Circle Engineering were split 50/50 between William and his brother.  (Ex 3, pp 8-9, 11-12, 15-18, 20).

      b.     Circle Engineering and Sammut Properties were both businesses and after Circle Engineering stopped paying rent, the business of Sammut Properties was to sell 5495 Gatewood and to get as much as it could for the transaction.  (Ex 3, pp 93-94).

      c.     Sammut Properties entered into a Purchase Agreement on August 5, 2020 to sell 5495 Gatewood to Emad Khamo.  Pursuant to the August 5, 2020 Purchase Agreement, Sammut Properties and the buyer, Emad Khamo, were to agree on an occupancy date and did so pursuant to a January 6, 2021 Amendment to the Purchase Agreement, that Sammut Properties was to vacate and remove all personal property from 5495 Gatewood by January 18, 2021 and that if Sammut Properties failed to remove all personal property by January 18, 2021, it would forfeit both ownership of all abandoned personal property and a $10,000 escrow deposit.  Sammut Properties remained in possession and control of the

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

building until occupancy was to be turned over on January 18, 2021. (Ex 3, pp 26-27, 34-39; Ex 4, p SP0014; Ex 5).

        d.    William and James Brown then went to 5495 Gatewood on January 8, 2021, the date of the accident, to engage in a property and debris removal project under the control of William Sammut for the benefit of Sammut Properties to get the building vacated to comply with the Amendment to the Purchase Agreement and to save the $10,000 escrow. William Sammut admitted the only reason he was there on January 8, 2021 was for the benefit of Sammut Properties and otherwise there was no reason for him to have been there. In addition to helping William for the benefit of Sammut Properties, James Brown also wanted some equipment that was still in the building for his own benefit. (Ex 3, pp 41-42, 58-60).

        e.    At 5495 Gatewood on the January 8, 2021 accident date, William Sammut and James Brown first loaded equipment which Brown wanted from Sammut Properties into a truck and then drove it to Brown's house and unloaded it. Then they returned to 5495 Gatewood and cleaned out the lower level. Then they moved a dumpster to a position below the second floor landing and went to the second floor to throw manuals and documents from the second floor offices over a second floor railing on the landing and into the dumpster below. While Brown was doing so, he fell from the second floor landing to the

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

7

floor below resulting in his death. (Ex 3, pp 62-72).

      f.     William Sammut admitted that at the time of the incident, he and Brown were working to get the building cleaned out for Sammut Properties, that William was in charge of the property and debris removal operation, and further admitted that the benefit to Sammut Properties of saving the $10,000 escrow would benefit William and his brother each by 50/50. (Ex 3, pp 69-73, 78-79, 84, 90-91, 99-100).

      g.     William Sammut admitted that what he was doing at 5495 Gatewood on the day of the accident had nothing to do with his residence at 60881 Indian Trail, that the Depositors Homeowners Policy defined the insured location as 60881 Indian Trail, that 5495 Gatewood was not an insured location under the Depositors Homeowners Policy, that the Depositors Homeowners Policy had a specific exclusion to exclude any business and it was his understanding that if an exclusion applied, there would be no coverage. (Ex 3, pp 88, 95, 97).

11.    On January 20, 2022 Depositors sent a reservation of rights and request for examination under oath to William Sammut. Depositors cited the allegations in the complaint that William Sammut and James Brown were engaged in work activities at the time of the accident, and that the policy contained multiple exclusions including the "Business" exclusion. Depositors stated that it would provide a defense to William Sammut for the claims made against him in the

HARVEY KRUSE  A PROFESSIONAL CORPORATION

ATTORNEYS & COUNSELORS  1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

underlying action subject to a reservation of rights, and that Depositors was undertaking an investigation and evaluation to determine if there was a duty to provide coverage or a defense to William Sammut. The letter further requested that William Sammut appear for an examination under oath and produce requested documents for Depositors' investigation and evaluation of its coverage defenses. (Ex 10).

12. Since that time, Depositors has provided a defense to William Sammut for the claims made against him in the underlying action by the law firm of Kallas & Henk, attorney Kenneth Dombrowski.

13. William Sammut eventually appeared for an examination under oath with requested documents on August 30, 2022 (Ex 3), and based on information learned at that examination under oath, Depositors determined that it does not owe coverage or a defense to William Sammut for any of the claims and allegations made against him in the underlying action.

14. Pursuant to Local Rule 7.1(a), concurrence was requested from the defendants Sammut and Brown and was denied and thus it is necessary to bring this motion.

15. Depositors requests oral argument of this motion per Local Rule 7.1(f).

9

WHEREFORE, plaintiff, Depositors Insurance Company, prays for summary judgment that it has no duty to provide coverage or a defense to William J. Sammut for any of the allegations and claims made against him in the underlying action pursuant to the Depositors Homeowners Policy.

<table>
<tr><td>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing pleading(s) has been electronically filed with the Clerk of the Court via the Electronic Case Filing system on the date shown below, which will send notice of filing to all attorneys of record.

/s/Cheryl A. Pinter

Legal Assistant, Harvey Kruse, PC

DATED: January 27, 2023

</td><td>

Respectfully submitted,
HARVEY KRUSE, P.C.

BY:/s/Michael F. Schmidt
Michael F. Schmidt P25213
Nathan Peplinski P66596
1050 Wilshire Drive, Suite 320
Troy, Michigan 48084-1526
(248) 649-7800
mschmidt@harveykruse.com
npeplinski@harveykruse.com

</td></tr>
</table>

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEPOSITORS INSURANCE COMPANY,
A foreign corporation,

                                    Case No. 2:22-cv-12629-NGE-EAS

      Plaintiff,                    Hon. Nancy G. Edmunds

v

WILLIAM J. SAMMUT and YVONNE BROWN,
As Personal Representative of the Estate of
James Brown III, Deceased,

      Defendants.

_____/

| | |
|---|---|
| Michael F. Schmidt (P25213) | Elizabeth L. Parker (P51288) |
| HARVEY KRUSE, P.C. | KOSTOPOULOS RODRIGUEZ PLLC |
| Attorney for Plaintiff | Attorney for Defendant William J. |
| 1050 Wilshire Drive, Suite 320 | Sammut |
| Troy, MI 48084 | 550 W. Merrill St., Ste. 100 |
| (248) 649-7800 | Birmingham, MI  48009-1443 |
| (248)649-2316 (fax) | (248) 268-7800 / (248) 268-7801-fax |
| mschmidt@harveykruse.com | liz@korolaw.com |

Neil A. Miller (P25645)
Attorney for Defendant Yvonne Brown
2401 W. Big Beaver Rd., Ste. 100
Troy, MI  48084-3304
(248) 649-0211 / (248) 649-5679 – fax
neil@neilmillerlaw.com

_____/

**BRIEF IN SUPPORT OF MOTION BY PLAINTIFF DEPOSITORS INSURANCE COMPANY FOR FED.R.CIV.P. 56 SUMMARY JUDGMENT AGAINST DEFENDANTS**

**ORAL ARGUMENT REQUESTED**

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## **<u>TABLE OF CONTENTS</u>**

Index of Authorities ............................................................. ii

Concise Statement of Questions Presented....................................... iv

Controlling or Most Appropriate Authority....................................... v

Statement of Material Facts ................................................. 1

Argument...................................................................... 13

    I.    Standard of Review ...................................................... 13

    II.   General Rules of Michigan Insurance Law.................................. 13

    III.  Depositors has no duty to provide coverage or a defense to William Sammut for the allegations and claims made against him in the underlying action........................................................ 17

Relief Requested ............................................................. 25

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

# <u>INDEX OF AUTHORITIES</u>

**Cases**

*American Bumper v Hartford Insurance,*
    452 Mich 440; 550 NW2d 475 (1996) ..................................................................................... 16

*Auto-Owners Ins Co v Churchman,*
    440 Mich 560; 489 NW2d 431 (1992) ................................................................................ 14, 15

*Brown v Farm Bureau Gen Ins Co,*
    273 Mich App 658; 730 NW2d 518 (2007) ............................................................................ 15

*Casey v Auto Owners Ins Co*,
    273 Mich App 388; 729 NW2d 277 (2006) ............................................................................ 16

*Castillo v Wimpee,*
    unpublished per curiam decision of the Michigan Court of Appeals,
    Docket No. 255605 (2005) ..................................................................................................... v, 22

*Century Surety v Charron,*
    230 Mich App 79; 583 NW2d 486 (1998) .............................................................................. 14

*Citizens Ins Co v Ladi,*
    unpublished per curiam decision of the Michigan Court of Appeals,
    Docket No. 283557 (2009) ..................................................................................................... v, 23

*Farm Bureau Mut Ins Co v Nikkel,*
    460 Mich 558; 596 NW2d 915 (1999) .................................................................................... 16

*Frankenmuth Mut Ins v Dore,*
    unpublished per curiam decision of the Michigan Court of Appeals,
    Docket No. 265176 (2006) ..................................................................................................... v, 22

*Frankenmuth Mut Ins v Kompus,*
    135 Mich App 667; 354 NW2d 303 (1984) ......................................................................... v, 18

*Fresard v Michigan Millers Mut Ins Co,*
    414 Mich 686; 327 NW2d 286 (1982) .................................................................................... 15

*Greenman v Michigan Mut Ins Co,*
    173 Mich App 88; 433 NW2d 346 (1988) .................................................................... v, 17, 19

*Henderson v State Farm Fire & Cas Co,*
    460 Mich 348; 596 NW2d 190 (1999) ................................................................................ 14, 15

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

*Henderson v Walled Lake Schools,*
469 F3d 479, 487 (2006):................................................................................. 13

*Kermans v Pendelton,*
62 Mich App 576; 233 NW2d 658 (1985) ..................................................... v, 18

*Liberty Mut Ins Co v Davenport,*
947 FSupp2d 773, 775 (E.D. Mich, 2013)................................................... v, 23

*Marlo Beauty v Farmers Insurance,*
227 Mich App 309; 575 NW2d 324 (1998) ................................................... 16

*Michigan Millers v Awad,*
unpublished per curiam decision of the Michigan Court of Appeals,
Docket No. 266842 (2006) ........................................................................ v, 22

*Protective National v Woodhaven,*
438 Mich 154; 476 NW2d 374 (1991).......................................................... 16

*State Mut Cyclone Ins Co v Abbott,*
52 Mich App 103; 216 NW2d 606 (1974) ..................................................... v, 18

*State Mut Ins Co v Russell,*
185 Mich App 521; 462 NW2d 785 (1990).................................................. v, 19

*Twichel v MIC Gen Ins Co,*
469 Mich 524; 676 NW2d 616 (2004) .......................................................... 14

*Wilkie v Auto-Owners Ins Co,*
469 Mich 41; 664 NW2d 776 (2003).......................................................... 15

**Rules**

Fed.R.Civ.P. 56(a) ............................................................................................. 13

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## CONCISE STATEMENT OF QUESTIONS PRESENTED

I.  Whether coverage and a defense for William J. Sammut for the claims made against him in the underlying action are excluded by the Depositors Homeowners policy Business exclusion?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

1. *Liberty Mut Ins Co v Davenport,* 947 FSupp2d 773, 775 (E.D. Mich, 2013).

2. *Citizens Ins Co v Ladi,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 283557 (2009) (Ex 7).

3. *Michigan Millers v Awad,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 266842 (2006) (Ex 6).

4. *Castillo v Wimpee,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 255605 (2005) (Ex 5).

5. *Frankenmuth Mut Ins v Dore,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 265176 (2006) (Ex 4).

6. *State Mut Ins Co v Russell,* 185 Mich App 521; 462 NW2d 785 (1990).

7. *Greenman v Michigan Mut Ins Co,* 173 Mich App 88; 433 NW2d 346 (1988).

8. *Frankenmuth Mut Ins v Kompus,* 135 Mich App 667; 354 NW2d 303 (1984).

9. *Kermans v Pendelton,* 62 Mich App 576; 233 NW2d 658 (1985).

10. *State Mut Cyclone Ins Co v Abbott,* 52 Mich App 103; 216 NW2d 606 (1974).

## STATEMENT OF MATERIAL FACTS

1.     Depositors Insurance Company ("Depositors") filed this suit to obtain a determination that Depositors owes no coverage or duty to defend William J. Sammut in the underlying action.  (Ex 1.)

2.     Depositors issued a Homeowners Policy to Sammut, Bill and Sammut, Wendy, 60881 Indian Trl., Ray, MI   48096, policy no. HOD 0059502862-4 with a policy period from 06/25/2020 to 06/25/2021.  (Ex 2).

3.     The Depositors Homeowners Policy specifically excludes liability coverage for any "Business" pursuant to the following exclusion:

**E.     COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

* * * *

**2.     "Business"**

**a.**     "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

of the "business".  (Ex 2, p 21 of 28)

4.      The policy defines "Business" as:

**3.**      "Business" means:

**a.**      A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.**      Any other activity engaged in for money or other compensation, except the following;

**1)**      Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**2)**      Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**3)**      The rendering of home day care services to a relative of an "insured".  (Ex 2, p 1 of 28).

\* \* \* \*

5.      The underlying complaint alleges that the underlying plaintiff's decedent, James Brown, III was on the premises of 5495 Gatewood Drive, Sterling Heights "for a ***business purpose*** on January 8, 2021, when he died due to injuries which resulted from a fall caused by the defective and hazardous condition of the premises."  (Ex 1, p 2-3, ¶ 9, emphasis added).

6.      The underlying complaint further alleges that William Sammut, Circle Engineering, Inc. and Sammut Properties, LLC were all "***conducting business*** at

**HARVEY KRUSE**      A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

5495 Gatewood . . ."  (Ex 1, p 2, ¶¶ 3, 4, 5, emphasis added).

7.     The underlying complaint further alleges that the defendant William Sammut was at all relevant times "involved in a ***personal property and debris removal project*** at 5495 Gatewood Drive . . . for which he enlisted the help of James Brown, III."  (Ex 1, ¶ 7, emphasis added).

8.     The underlying complaint further alleges that William Sammut "owed to James Brown, III the duty of exercising reasonable care for his safety and to provide James Brown, III with a reasonably ***safe place to work***, to keep ***his work area*** free of foreseeable nuisances, hazards, and dangers . . ."  (Ex 1, p 5, ¶ 25, emphasis added).

9.     The underlying complaint further alleges that William Sammut, Circle Engineering and Sammut Properties were in possession of or in control of the premises and breached their legal duties to plaintiff and were negligent in regard to the "***work***" including in one or more of the following ways:

   a. Failing to adequately inspect, evaluate and/or assess ***the work necessary*** . . .

   h. Defendant allowed property and debris removal activities to proceed without ensuring in advance ***that operations could be undertaken*** in a safe manner, and that the subject stairway landing was in a reasonably safe condition;

   i. Failing to inspect Plaintiff's Decedent's ***work area*** to insure that the property and debris removal project could be undertaken safely, in advance of commencement ***of the work***;

   j. Failing to insure that Plaintiff's Decedent had safe ingress and

3

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

egress to ***his work area***;

k. Failure to warn Plaintiff of the compromised and dangerous conditions in ***his work area***, including the mezzanine landing . . ." (Ex 2, p 6, ¶ 26, emphasis added).

10. Depositors has also obtained testimony from William Sammut in an examination under oath (Ex 3) pursuant to the Depositors Homeowners Policy Conditions (Ex 3, pp 25-26 of 28), in which William Sammut testified that:

a. William Sammut's father started Circle Engineering in 1967 which was a tool and die shop and had the building at 5495 Gatewood built in 1979. (Ex 3, pp 8-9). William Sammut and his brother owned the building through Sammut Properties, LLC since around 1999. (Ex 3, pp 9, 11-12). At the time of the Brown incident, William and his brother were each 50% members of the LLC. (Ex 3, p 12). The only tenant of Sammut Properties was Circle Engineering, the tool and die shop, which was also owned 50/50 by William Sammut and his brother. William Sammut was the president of Circle Engineering and his brother was the vice president. (Ex 3, p 18). Circle Engineering stopped its operations and stopped paying rent to Sammut Properties in March 2020 and at that point Sammut Properties took possession of the building. (Ex 3, pp 15-17). When Circle Engineering wound up its operations and Sammut Properties sold the building, the profits from both Circle Engineering and Sammut Properties were split 50/50 between William Sammut and his brother. (Ex 3, p 20).

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

b.      When Circle Engineering was in operation it was an "operating business . . . to provide a livelihood and an employment and procure a profit" and engaged in "commercial transactions" (Ex 3, p 93).  When Sammut Properties was in existence it was for a "business purpose" to handle the lease of 5495 Gatewood, and after Circle Engineering stopped paying rent, the business of Sammut Properties was to sell 5495 Gatewood and to get as much money as it could for that transaction, which would benefit William by 50% (Ex 3, pp 93-4):

> Q. So over the time of their existence both Circle Engineering and Sammut Properties were engaged in a business; right?
> A. Yes.
> Q. Part of the business of Sammut Properties after Circle Engineering stopped paying rent was to sell 5495 Gatewood?
> A. Yes.
> Q. And to get as much money as they could for that transaction?
> A. Yes.
> Q. Which would benefit you 50 percent, correct?
> A. Yes.  (Ex 3, p 94).

c.      Within three months after Circle Engineering stopped operations, Circle Engineering contracted with an auction company to sell off the Circle Engineering equipment and the proceeds of the auction of approximately $125,000 were split after expenses 50/50 between William and his brother.  (Ex 3, pp 22-24).

d.      Sammut Properties entered into a Purchase Agreement on

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

August 5, 2020 to sell 5495 Gatewood to Emad Khamo.  (Ex 4).  The Agreement

was signed by William's wife, Wendy A. Sammut, by William Sammut as

Member of Sammut Properties, LLC and by John P. Sammut, as Manager of

Sammut Properties, LLC.  (Ex 4, p SP0016; Ex 3, pp 26-27).  William Sammut's

wife, Wendy, passed away on October 4, 2020 and thereafter all of the documents

regarding the sales transaction were signed by William and his brother as members

of Sammut Properties.  (Ex 3, pp 27-37; Ex 4, SP0018, 19, 26, 28, 29, 30, 32, 34,

37, 39, 43, 45, 47, 50, 53, 56, 60, 64, 66, 68, 70, 72, 74).  The sales price was

$650,000.  (Ex 3, p 27; Ex 4, pp SP0019-20).

> e.      According to the Purchase Agreement: "The seller and
purchaser shall mutually agree on a [sic] occupancy date within 7 days from
acceptance."  (Ex 4, p SP0014).   William agreed that he was aware of this
provision and that there had to be a date set when occupancy would be turned over
to the purchaser, and until that time Sammut Properties would remain in possession
and control of the building:

> Q. . . . . Were you aware of that provision?
> A. Yes.
> Q. So, you knew there had to be a date where occupancy
>    would be turned over to the purchaser?
> A. Yes.
> Q. Up until that time Sammut Properties will remain in
>    possession of the building, correct?
> MS. PARKER: Do you understand his question?  You
>    understood that up until the point of the closing and that
>    occupancy was given to the buyer, Sammut Properties

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

6

retains ***ownership and control***?

THE WITNESS: Until closing?

MS. PARKER: Right.

THE WITNESS: ***Yes***.

BY MR. SCHMIDT:

Q. . . . There had to be an agreed date as to when the property would be turned over. Were you aware of that?

A. Yes.

Q. Up until that time, Sammut Properties would still remain in ***possession*** of the property, correct?

A. ***Yes.*** (Ex 3, pp 34-35, emphasis added).

    f.    William testified that the acceptance date of the Purchase Agreement was December 30, 2020 and thus the occupancy date had to be agreed upon within seven days of that date which would be January 6, 2021. (Ex 3, p 37). On that date, there was an Amendment to the Purchase Agreement stating:

> "The Seller has not vacated the Property as provided in the above described Purchase Agreement. The Seller and Purchaser hereby agree that Sterling Title Agency is authorized to hold $10,000.00 from Seller's proceeds in escrow as cleaning deposit. The Seller shall vacate and remove all personal property on or before January 18, 2021. If Seller fails to remove all personal property by January 18, 2021, the Seller shall forfeit ownership of all abandoned personal property and the $10,000 escrow deposit." (Ex 3, pp 37-39; Ex 5, Amendment).

Sammut Properties was to remain in possession and control of the building until occupancy would be turned over on January 18, 2021. (Ex 3, pp 34-39).

    g.    William was in Florida until January 5 or 6, 2021 and was aware on his return that according to the Amendment to the Purchase Agreement,

**HARVEY KRUSE**  A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Sammut Properties, LLC was required to get everything out of the building by January 18, 2021 and that if Sammut Properties did not vacate the building by January 18, 2021, it would forfeit $10,000 and any personal property still on the premises. (Ex 3, pp 41-42).

      h.    William and James Brown then went to 5495 Gatewood on the day of the accident for the benefit of Sammut Properties to get the building vacated to comply with the Amendment to the Purchase Agreement and to save the $10,000 escrow which otherwise would be forfeited. In addition, James Brown also went there to get some equipment that was still in the building for his own benefit. (Ex 3, pp 55-59). William testified that he and Brown were there to help Sammut Properties get the building vacated. The only reason William was there on January 8 was for the benefit of Sammut Properties, and other than Sammut Properties having to get the stuff out of there or have to forfeit the property and the $10,000 escrow, there is no way William would have even been there:

> Q. So he's [Brown] going there to get some equipment that was in the building that would benefit him, right?
> A. Yes.
> Q. And he also went in there to be helping you?
> A. Yes.
> Q. What he's doing helping you is also helping Sammut Properties because you are going to get the building vacated, right?
> A. Yes.
> Q. What you were doing was to help Sammut Properties get the building vacated, right?
> A. Yes.

HARVEY KRUSE   A PROFESSIONAL CORPORATION   ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

> Q. *I mean, other than Sammut Properties having to get the stuff out of there or else pay $10,000 bucks, there was no way you would be doing anything over there at that time, were you?*
> A. *No.*
> Q. *So the only reason you were there on January 8 was for the benefit of Sammut Properties, right?*
> A. *Yes.*
>
> <div align="center">* * * *</div>
>
> Q. This was his [Brown] one and only day?
> A. *Working, yes.*  (Ex 3, pp 59-60, emphasis added)

i.       At 5495 Gatewood on the accident date of January 8, 2021, William and Brown first loaded equipment which Brown wanted from Sammut Properties into a truck and drove it to Brown's house and unloaded it and then returned to 5495 Gatewood and "finished cleaning the whole lower level" and then went upstairs to the second floor where they had to throw out computer desks, filing cabinets and "lots of brochures."  (Ex 3, pp 63-64, 65).  Brown had moved a dumpster to a position below the second floor landing to throw manuals and documents over the railing into the dumpster which was for the benefit of Sammut Properties:

> Q. Okay.  It says, the day of the accident it says Jimmy had moved a dumpster below the second floor and was tossing manuals and documents over the railing into the dumpster to avoid going up and down the stairs; is that right?
> A. Correct.
> Q. So, doing that would be, obviously, be the benefit for Sammut Properties because he is throwing magazines out, right?  That's not something he is taking, right?
> A. Yeah, we were just – there were just brochures from

<div style="writing-mode: vertical-rl; text-align: center;">HARVEY KRUSE   A PROFESSIONAL CORPORATION<br>ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800</div>

<div align="center">9</div>

different companies of stuff we used in our tooling.  (Ex 3, pp 62-3).

j.      Brown was throwing the magazines and documents over the second floor railing into the dumpster on the first floor when he fell from the second floor landing to the floor below resulting in his death.  (Ex 3, pp 62-72).

k.      William admitted that at the time of the incident he was working to get the building cleaned out for Sammut Properties:

> Q. ***What you were doing there that day was working to get the building cleaned out for Sammut Properties, right?***
> A. ***Yes.***
>
> \* \* \* \*
>
> Q. Those magazines, those magazines that Jimmy was throwing into the dumpster were magazines that Sammut Properties had to get out of the building?
> A. Yes.  (Ex 3, pp 70-73, emphasis added).

l.      Referring to another dumpster at 5495 Gatewood that was loaded that day with desks and office equipment, William testified:

> Q. Look at 383.  Is that – that looks like that's the dumpster just opening it up to see what's in it?
> A. Yes.
> Q. Looks like some desks and whatnot?
> A. Yes.
> Q. Is that stuff that is going to be tossed out?
> A. Yes.
> Q. That's stuff that you and James Brown had loaded in there that day?
> A. Yes.
> Q. ***So that's stuff that you and James would have been working on for the benefit of Sammut Properties to get rid of?***
> A. ***Yes.***  (Ex 3, pp 78-79, emphasis added).

10

m.　　In regard to boxes of files on a pallet, William admitted that he and Brown had moved the boxes to the door for William to take home as company records which was "***work that was being done by you and Jimmy to benefit Sammut Properties, LLC, right?***  A.  ***Yes.***"  (Ex 3, p 84, emphasis added).

n.　　At the time of the incident William admitted he was at 5495 Gatewood cleaning out that property for the sales transaction:

> Q. The question about conducting business, you were, ***you were at 5495 Gatewood cleaning out the property for the sales transaction, weren't you?***
> A. ***Yes.***  (Ex 3, p 99, emphasis added).

o.　　William also admitted that he was in charge of the property and debris removal project at 5495 Gatewood on the day of the incident:

> Q. . . . Now, at the time of the accident, you were the person that was in charge of the property and debris removal, weren't you?
> A. Yes . . . .
> Q. . . .  The property removal, you were the person in charge of it that day?
> A. I was in the charge of removal, yes.  (Ex 3, pp 99-100).

p.　　Any benefit that would come to Sammut Properties would go 50/50 to William Sammut and his brother and the reason William was at 5495 Gatewood on the date of the accident "was so that Sammut Properties would not have to lose $10,000 . . .  It was $10,000 in my pocket."  (Ex 3, p 90).  William also testified:

**HARVEY KRUSE**　　A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS　1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Q. But the person who's out the $10,000 is not your wife, it
   is you?
A. Yes.
Q. You are out five thousand bucks?
A. Yes.

\* \* \* \*

Q . . . There's only one way you or your wife get 50 percent
   is *because Sammut Properties was a business and you*
   *and/or your wife were the members*?
A. *Correct.*  (Ex 3, pp 91, 95, emphasis added).

q.      William admitted that Sammut Properties did not vacate or
move out the personal property by January 18, 2021 and had to forfeit the $10,000
escrow.  (Ex 3, p 39).

11.      William admitted that what he was doing at 5495 Gatewood on the
day of the accident had nothing to do with his residence at 60881 Indian Trail, that
the Depositors Homeowners Policy defined the insured location as 60881 Indian
Trail, that 5495 Gatewood was not an insured location under the Depositors
Homeowners Policy, that the Depositors Homeowners Policy had a specific
exclusion to exclude any business, and it was his understanding that if an exclusion
applied, there would be no coverage under the policy:

Q. Would you agree with me that the work that you were
   doing at 5495 Gatewood on the date of the accident had
   nothing to do with your residence at 60881 Indian Trail?
A. Didn't have nothing to do with my house, you're right.

\* \* \* \*

Q. Are you aware that the insurance policy, Exhibit 2, has a
   specific exclusion to exclude any business?
A. Yeah, I believe so.

\* \* \* \*

12

Q. Well, the insured -- the policy defines the insured location as 60881 Indian Trail. That's the first page there?
A. Okay.
Q. So, 5495 Gatewood is not that insured location, is it?
A. Correct.

\* \* \* \*

Q. Is it your understanding that if an exclusion applies then there's no coverage?
A. Well, yeah. Yes.  (Ex 3, pp 88, 95, 97)

## ARGUMENT

### I.   STANDARD OF REVIEW.

Per Fed.R.Civ.P. 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Per *Henderson v Walled Lake Schools,* 469 F3d 479, 487 (2006):

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c) . . . . Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a genuine issue of material fact.  *Leadbetter v Gilley,* 385 F3d 683, 689-90 (6th Cir. 2005).  A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.  *Hedrick v W. Reserve Care Sys.,* 355 F3d 444, 451 (6th Cir. 2004)."

### II.   GENERAL RULES OF MICHIGAN INSURANCE LAW.

1.      The construction and interpretation of insurance policies is a question of law to be determined by the court.  *Auto-Owners Ins Co v Churchman,* 440 Mich 560,

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

566-567; 489 NW2d 431 (1992).  "Initially, in reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

2.     An insurance policy is a contract that must be interpreted and enforced as written:

> An insurance policy is much the same as any other contract.  It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties.  Accordingly, the court must look at the contract as a whole and give meaning to all terms.  Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy."  This Court cannot create ambiguity where none exists.  *Auto-Owners Ins Co,* 440 Mich at 566-567, quoting *Raska v Farm Bureau Mut Ins Co*, 412 Mich 355, 361-362; 314 NW2d 440 (1982).

3.     If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions.  *Century Surety v Charron,* 230 Mich App 79, 82; 583 NW2d 486 (1998).

4.     If an insurance policy contains terms which are not defined, then the courts look to the common, ordinary definition of the terms:  "An insurance policy is enforced in accordance with the terms.  Where a term is not defined in the policy, it is accorded its commonly understood meaning."  *Twichel v MIC Gen Ins Co,* 469 Mich 524, 534; 676 NW2d 616 (2004).  "This can be accomplished by referring to its dictionary definition."  *Brown v Farm Bureau Gen Ins Co,* 273

**HARVEY KRUSE**    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Mich App 658, 662; 730 NW2d 518 (2007).

5.    Michigan courts have explicitly rejected the so called reasonable expectation doctrine as an improper means of interpreting an insurance policy: "Accordingly, we hold that the rule of reasonable expectations has no application in Michigan. . . ." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003).

6.    The court cannot create an ambiguity where the terms of the policy are clear, and when there is no ambiguity, the policy will be enforced as written. *Henderson*, 460 Mich at 354.

7.    Exclusionary clauses in insurance policies must be given effect: "[C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims.  Clear and specific exclusions must be given effect.  It is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins Co,* 440 Mich at 566-567, citations omitted.  The insurer may insert any number of exclusions that it deems proper or necessary.  *Fresard v Michigan Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982). Coverage is lost if any of these exclusions apply:

> However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims.  Clear and specific exclusions must be given effect.

8.    An insured is required to read his or her policy.  He or she cannot

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

15

escape the plain language of the policy by claiming that he or she was ignorant of the contents or that he or she thought it said something else. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 567-568; 596 NW2d 915 (1999). "It is well established that an insured is obligated to read his or her insurance policy and raise any questions about the coverage within a reasonable time after the policy is issued. Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394-395; 729 NW2d 277 (2006).

9.    Although the duty to defend and the duty to provide coverage are different, analysis of an insurer's duty to defend must begin with an examination whether coverage is possible, and if coverage is not possible then there is no duty to defend. "The duty to defend is related to the duty to indemnify in that it arises only with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend." *American Bumper v Hartford Insurance,* 452 Mich 440, 450; 550 NW2d 475 (1996). ". . .  If the policy does not apply then the insurer does not have a duty to indemnify or defend the insured." *Protective National v Woodhaven,* 438 Mich 154, 159-60; 476 NW2d 374 (1991).  See also, *Marlo Beauty v Farmers Insurance,* 227 Mich App 309, 315; 575 NW2d 324 (1998).

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

16

**III.   DEPOSITORS HAS NO DUTY TO PROVIDE COVERAGE OR A DEFENSE TO WILLIAM SAMMUT FOR THE ALLEGATIONS AND CLAIMS MADE AGAINST HIM IN THE UNDERLYING ACTION.**

Depositors has no duty to provide coverage or a defense to William Sammut for the allegations made against him in the underlying action because coverage is excluded by the "Business" exclusion.

The "Business" exclusion and its predecessor "Business Pursuits" exclusion have been enforced in multiple Michigan appellate cases.

Homeowner insurance policies initially contained so-called "Business Pursuits" exclusions to exclude business activities from coverage under a homeowners policy since such activities would obviously include substantial additional exposures not charged for by a homeowner policy premium.  The language of such business pursuits exclusions excluded coverage for "bodily injury or property damage arising out of business pursuits of the insured except activities which are ordinarily incident to nonbusiness pursuits." *Greenman v Michigan Mut,* 173 Mich App 88, 94; 433 NW2d 346 (1980).

The courts interpreted this exclusion to recognize two elements, continuity and profit motive:

> To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence

17

or profit, commercial transactions or engagements. *State Mutual v Abbott,* 52 Mich App 103, 108; 216 NW2d 606 (1974).

The Michigan appellate courts have affirmed summary dispositions enforcing this exclusion in multiple cases finding that the insureds were engaged in a "business pursuit."

In *State Mut v Abbott,* 52 Mich App 103, 108; 216 NW2d 606 (1974) the court affirmed declaratory judgment for the insurer holding:

> "Merely showing that striking a horse with a rasp would be cruel, unbusinesslike and out of the ordinary does not make that activity 'ordinarily incident to nonbusiness pursuits.' The proofs submitted show that Mr. Abbott was customarily employed as a farrier for profit. Both prongs of the 'business pursuit' were met."

In *Kermans v Pendelton,* 62 Mich App 576, 579; 233 NW2d 658 (1975), the court affirmed summary judgment for the insurer enforcing the exclusion holding:

> "As to the business-pursuit exclusion, we agree with the trial court's finding that defendant Pendelton was engaged in his business pursuit at the time of the shooting and that but for this business pursuit, the shooting would not have occurred. The gun was kept in the bar and linked to it. As the trial court pointed out, the shooting incident was related to the physical safety of the bar and its patrons."

In *Frankenmuth Mutual v Kompus*, 135 Mich App 667, 676-77; 354 NW2d 303 (1983), the court affirmed summary judgment for the insurer enforcing the exclusion holding:

> "We believe that, under the two-pronged test for business pursuits, the acts complained of in the individual patients' complaints did arise out of business pursuits of Kompus. The trial court found in its opinion of February 1, 1982, that '[without] exception, the acts complained of

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

18

occurred during a doctor/patient relationship' . . .  It is clear that the relationships began as ones involving profit, with the parties expecting Kompus to be paid for his services.  We are unwilling to say that the profit requirement of the business pursuits test may be satisfied only if the individual complained-of acts were themselves specifically performed for profit on an act-by-act basis.  The test is not so narrow.  We interpret it instead to require that the acts be performed as part of the business or service normally performed by the insured for profit, i.e. the business pursuit of the insured; in the instant case, psychiatric treatment or therapy."

In *Greenman v Michigan Mutual,* 173 Mich App 88, 9, 93-4; 433 NW2d 346 (1980), the court affirmed summary judgment for the defendant insurer enforcing the exclusion holding:

"A business pursuit is an activity engaged in continuously and for profit . . . The complained-of acts themselves need not be performed for profit; the acts need only be performed during the business pursuit of the insured . . .  In this case, the complained-of acts occurred at the law firm where plaintiff and the complainant worked.  It is clear that the activities of the law firm where plaintiff practiced law were continuous and for profit."

In *State Mutual Ins v Russell,* 185 Mich App 521, 529-30; 462 NW2d 785 (1990), the court affirmed summary judgment in favor of the insurer enforcing the exclusion holding:

"To trigger the business pursuit exclusion, the activity must be engaged in continually for profit . . .  For exclusion purposes, the focus is on the business pursuit itself, not the specific acts complained of.  That is, all that is required to trigger the exclusion is that the acts be performed as part of a business or service normally performed by the insured for profit, i.e. childcare."

As applied to this case, pursuant to this case law, William was certainly

19

engaged in a business pursuit as he had a profit motive of trying to save the $10,000 escrow and there was certainly continuity in that he was involved in winding up the two businesses, Circle Engineering and Sammut Properties, LLC, that he had been involved with for over 20 years.

Insurers eventually **_changed_** the exclusion to the language at issue in the current case to make the exclusion broader and easier to apply:

**E. COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

\* \* \* \*

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business". (Ex 2, p 21 of 28)

The policy defines "business":

**3.** "Business" means:

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

20

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following;

**1)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**2)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**3)** The rendering of home day care services to a relative of an "insured". (Ex 2, p 1 of 28).

Even though there was certainly profit motive and continuity in the underlying case, there is no longer any such requirement. There only has to be a "'bodily injury' . . . arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured.'" (Ex 2, p 21 of 28).

"Business" is defined by the policy to mean: "A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or any other activity engaged in for money or other compensation . . ." (Ex 2, p 1 of 28).

Multiple Michigan appellate cases have affirmed summary dispositions enforcing this exclusion on the basis that it is much broader than a "business pursuits" exclusion.

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

In *Frankenmuth Mut Ins Co v Dore,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 265176 (2006) (Ex 6),[1] as in the current case, the exclusion excluded damages "arising out of or in connection with a business engaged in by an insured." "Business" was defined as including "trade, profession or occupation." (Ex 6, p 1). The court reversed the trial court's denial of the insurer's motion for summary disposition:

> "Likewise, the fact that defendant was not being paid for the specific acts he performed in connection with the contest does not mean that he was not engaged in the business activity at the time the underlying plaintiffs were injured." (Ex 6, p 4).

Similarly, in *Castillo v Wimpee,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 255605 (2005) (Ex 7), the court held:

> "The insured day care owner testified that she put the latch on the door leading from the day care area to the backyard pool because she 'didn't want kids to get there.' She also stated that the latch was installed up high so that 'kids couldn't reach it.' We therefore conclude that the only evidence on the matter establishes that the latch and failure to repair it are directly connected to the day care business and are not incidental to 'non-business' pursuits." (Ex 7, p 2).

In *Michigan Millers v Awad,* unpublished per curiam decision of the Michigan Court of Appeals, Docket No. 266842 (2006) (Ex 8), the court held:

> "More importantly, this operation existed for only a short period of time due to the seasonal nature of the product being sold. Seasonal operations of this type are still valid business pursuits, even if they are not operated as permanent businesses. . . Additionally, the trial court

---

[1] The unpublished opinions are cited to show the well-accepted rule of law uniformly applied by Michigan appellate courts.

22

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

too narrowly applied the profit element by concluding that this operation did not result in gainful employment for Awad, beyond the two weeks it existed . . .  Plaintiff was not required to prove that Awad could have supported himself by selling fireworks in order for the business pursuit exception to apply.  Here, it is clear that Awad was engaged in a commercial transaction by selling fireworks to the general public."  (Ex 8, p 3).

In *Citizens Ins v Ladi,* unpublished per curiam decision of the Michigan

Court of Appeals, Docket No. 283557 (2009) (Ex 9), the court held:

"However, the policy in the present case used the term 'business engaged in' not the term 'business pursuit.'  As our Supreme Court has previously explained, a contractual provision must be given its contextual meaning. . . .  ***The context of the phrase 'business engaged in' indicates that the term is to be broadly applied and gives no indication that profit motive is relevant.***  Citizens was justified in concluding that, on the basis of the underlying complaint, coverage was not available to Davis because the alleged injuries were the result of Davis engaging in business through Fireworks North and Second Chance Body Armor."  (Ex 9, p 3, emphasis added).

In *Liberty Mutual v Davenport,* 947 FSupp2d 773 (E.D. Mich, 2013), the

court applied the general rules of Michigan insurance law quoted previously in this

brief holding:

"Here, the policy's business exclusion unequivocally excludes Plaintiff's liability '[a]rising out of or in connection with a 'business.'"  Business is defined to include an insured's "occupation."  McClintic acknowledges that the day care business is her occupation.  The underlying state court litigation arises directly out of McClintic's business.  Accordingly, no coverage exists.  Plaintiff is entitled to summary judgment."  947 FSupp2d at 776.

The testimony establishes that Circle Engineering and Sammut Properties

were both businesses, that the business function of Circle Engineering at the time

23

of the incident was to wind up its operations and sell its equipment which was at 5495 Gatewood through an auction to make a profit.  The business purpose of Sammut Properties at the time of the incident was to make the best deal possible to sell 5495 Gatewood to make a profit.  This required entering the Purchase Agreement with the buyer and complying with the Purchase Agreement to vacate the building and remove all personal property in the building by the set date of January 18, 2021, and failing to do so would result in forfeiting a $10,000 escrow and any personal property still on the premises at that time.

The undisputed facts establish that the reason William Sammut and James Brown were at 5495 Gatewood on the date of the accident was to clean out the personal property to comply with the Amendment to the Purchase Agreement (Ex 5) and to save the $10,000 escrow which otherwise would be forfeited.  James Brown was also there to get equipment and got equipment that was in the building, a benefit for himself.  William testified that the only reason William was there on the day of the accident was for the benefit of Sammut Properties to get the personal property out of the premises and to save the $10,000 escrow.  William admitted that this was not only for the benefit of Sammut Properties but also for the benefit of himself and his brother who would share any and all profits from Circle Engineering and Sammut Properties 50/50.  The specific activity at the time of the accident was throwing out magazines and documents into a dumpster which

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

24

William testified was solely for the benefit of Sammut Properties by both himself and Brown.

The activities of William and Brown were clearly excluded from coverage as the "bodily injury" certainly arose out of and in connection with a "business" engaged in by both William and Brown. The "business" as alleged by the plaintiff was "working" and was clearly work or an "occupation" which was "full-time, part-time, or occasional," engaged in by both William and Brown, which was also engaged in "for money or other compensation." As such, the Business exclusion clearly applies and excludes any duty to provide coverage or a defense for any of the allegations and claims made against William in the underlying action.

## **RELIEF REQUESTED**

It is respectfully requested that this Honorable Court enter summary judgment in favor of Depositors Insurance Company that it has no duty to defend or provide coverage to William Sammut for the claims made against him in the underlying action.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing pleading(s) has been electronically filed with the Clerk of the Court via the Electronic Case Filing system on the date shown below, which will send notice of filing to all attorneys of record.

/s/Cheryl A. Pinter

Legal Assistant, Harvey Kruse, PC

DATED: January 27, 2023

Respectfully submitted,
HARVEY KRUSE, P.C.

BY:/s/Michael F. Schmidt

Michael F. Schmidt P25213
Nathan Peplinski P66596
1050 Wilshire Drive, Suite 320
Troy, Michigan 48084-1526
(248) 649-7800
mschmidt@harveykruse.com

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800