UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEPOSITORS INSURANCE COMPANY,

    Plaintiff,

v.

WILLIAM SAMMUT,
and YVONNE BROWN, as personal
representative of the Estate of James
Brown III,

    Defendants.

_____/

Case No. 22-12629

Honorable Nancy G. Edmunds

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT [14] [18]**

On January 8, 2021, James Brown III tragically died after falling from the second story of a building in Sterling Heights, Michigan. Following his death, the personal representative of his estate, Defendant Yvonne Brown, filed a lawsuit in Macomb County Circuit Court against William Sammut and Sammut Properties, LLC, among others, seeking damages for negligence and premises liability resulting in death (the "Underlying Action"). (*See* ECF No. 1-2.) Plaintiff Depositors Insurance Company ("Depositors") brings the present case seeking a declaratory judgment that it owes no coverage or duty to defend Defendant William Sammut in the Underlying Action. Before the Court are fully briefed cross motions for summary judgment filed by Depositors and William Sammut.[1] (ECF Nos. 14, 18, 22, 23.) Having reviewed the motion pleadings and evidence, the Court finds that a hearing is not necessary. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated

---

[1] Plaintiff did not timely file its combined response in opposition to Sammut's motion and reply in support of its own motion. (ECF No. 23.) Nevertheless, the Court accepts the brief as timely filed in light of Plaintiff's timely application to file an enlarged brief which attached the response/reply.

1

below, Plaintiff Depositors' Motion for Summary Judgment (ECF No. 14) is GRANTED and Defendant William Sammut's Motion for Summary Judgment (ECF No. 18) is DENIED.

## I.   Background

### A.   Homeowners' Insurance Policy

William Sammut and his wife, Wendy Sammut, procured from Depositors a homeowners' insurance policy, along with several policy endorsements, for their residential property in Ray, Michigan (the "Policy"). The personal liability provision of the "Premier Homeowners Endorsement" (the "Endorsement") replaced that of the main policy. (ECF No. 14-3, PageID.267.) Under this provision, "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' . . . caused by an 'occurrence' to which [the] coverage applies," Depositors has a duty to provide a defense and pay for damages for which the insured is liable. (*Id.*, PageID.267.) The policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." (*Id.*, PageID.218.) An occurrence, as used in this section, is defined as "an accident . . . which results, during the policy period, in . . . '[b]odily injury.'" (*Id.*, PageID.219.)

A relevant portion of the Policy provides that the "Personal Liability" provision does not apply to:

> [E] 2. "Business"
>
>   a. "Bodily injury" . . . arising out of or in connection with a "business" . . . engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".
>
>   This Exclusion . . . applies but is not limited to an act or omission, regardless of its nature or circumstance,

2

>>involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(*Id.*, PageID.238.) "Business" is defined by the Policy as "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or . . . [a]ny other activity engaged in for money or compensation, except . . . [v]olunteer activities for which no money is received other than payment for expenses incurred to perform the activity." (*Id.*, PageID.218.)

The Endorsement adds to the main policy an additional definition and terms. The definition reads as follows:

>>14. "Personal injury" means injury arising out of one or more of the following offenses during the policy period:
>>
>>>a. false arrest, detention or imprisonment, or malicious prosecution;
>>>
>>>b. libel, slander or defamation of character; or
>>>
>>>c. invasion of privacy, wrongful eviction or wrongful entry.

(*Id.*, PageID.265.) Per the Endorsement, several coverage exclusions listed in the main policy do not apply to "personal injury." (*Id.*, PageID.268.) Rather, a separate list of exclusions applies to personal injury, including "injury arising out of the 'business' pursuits of an insured," among other things. (*Id.*, PageID.268.)

### B.     Events Giving Rise to this Lawsuit

In or around 1999, Defendant William Sammut and his brother, John Sammut, purchased the commercial property at 5495 Gatewood Drive in Sterling Heights (the "Property") through their company, Sammut Properties, LLC. (ECF No. 14-4, PageID.274.) At some point, William Sammut's wife, Wendy, replaced him as member of Sammut Properties and Lisa Sammut, who was John Sammut's wife, was also added as

3

a member. (*Id.*; ECF No. 18-4.) Sammut Properties' sole business purpose was leasing the Property to Circle Engineering, another entity owned by William and John Sammut, and collecting rent. This continued until March 2020 when Circle Engineering ceased operations and the Property was listed for sale. (ECF No. 14-4, PageID.274.) In August 2020, an individual expressed interest in buying the Property. William, Wendy, and John Sammut each signed the purchase agreement on behalf of Sammut Properties. (ECF No. 14-5.) Wendy Sammut passed away shortly thereafter. (ECF No. 14-4, PageID.278.) From that point through the closing on December 30, 2020, all of the documents regarding the sales transaction were signed by William and his brother on behalf of Sammut Properties. (*Id.*; ECF No. 14-5.) Sammut Properties was to remain in possession and control of the building until occupancy would be turned over to the buyer on January 18, 2021. (*Id.*, PageID.280-81.)

On January 4, 2022, the buyer took delivery of a machine at the Property. At that time, he found that Sammut Properties had left items behind at the Property and therefore had not vacated it as provided in the purchase agreement. (ECF No. 18-5, PageID.504; ECF No. 18-6.) The buyer and Sammut Properties therefore executed an amendment to the purchase agreement which provided that the $10,000 escrow payment was to be held back as a "cleaning deposit," and that Sammut Properties was required to remove all personal items and equipment from the Property by January 18, 2021 or it would forfeit the $10,000 deposit. (ECF No. 18-6.)

William Sammut and James Brown went to the Property to clear it out on January 8, 2021. Sammut had not been to the Property for about five months. (ECF No. 18-3, PageID.447.) Brown, who was Sammut's friend of over 25 years, wanted to keep some

4

of the equipment from the Property. He went with Sammut to retrieve those items and to assist in clearing out the other items. (*Id.*, PageID.455.) In the afternoon, Brown went to a second floor office to see what needed to be done there. (*Id.*, PageID.462.) He was in the process of throwing magazines and documents over the second floor railing into a dumpster on the first floor when he fell from the second floor landing to the floor below. Sammut did not see the accident happen. He heard a loud noise, then found Brown lying on the downstairs shop floor, unresponsive. Sammut called 911 and began CPR. After the fire department arrived, it was determined that Brown had passed. (ECF No. 14-4, PageID.287-289; ECF No. 18-7, PageID.618.)

Since Sammut Properties was effectively no longer in operation, William and John split the profits from the sale of the Property evenly. (ECF No. 14-4, PageID.276.) Because Sammut Properties did not complete cleaning out the Property as required under the amendment to the purchase agreement, however, the $10,000 escrow check was returned to the buyer.

### C. The Underlying Action

The Underlying Action complaint identified William Sammut, Sammut Properties, LLC, and others as defendants. William Sammut tendered the individual claims against him to his homeowners insurer, Plaintiff Depositors, based on the allegations of negligence stated against him. Depositors undertook his defense under a reservation of rights then filed the present action.

## II. Standard of Review

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

### III.   Analysis

Depositors argues that it owes no coverage and has no duty to defend William Sammut in the Underlying Action due to the "Business" exclusion of the Policy. (*See* ECF No. 14-3, PageID.267.) William Sammut argues the business exclusion does not apply because he was not at the Property for any business purpose. (ECF No. 18, PageID.417.) According to Sammut, Depositors' motion relies on the wrong portion of the Policy because the Endorsement deletes and replaces the main policy with its personal injury provision and related, less broad, exclusion for injuries "arising out of the 'business pursuits' of an 'insured'". (*Id.*, PageID.418-19.) Alternatively, Sammut argues, even if the main policy's business exclusion relating to bodily injuries applies, he was not engaged in cleaning the Property as a business venture.

#### A.   The Accident Caused Bodily Injury

The Policy is a contract which the Court must interpret as written absent any ambiguity or public policy concerns. *Auto–Owners Ins. Co. v. Churchman*, 489 N.W.2d at 434. Here, the clear language presents no ambiguity and no concerns for public policy. *See, e.g., State Mut. Ins. Co. v. Russell*, 462 N.W.2d 785, 788 (1990) (finding that business pursuit exclusions in homeowners policies do not contravene Michigan public policy.) The personal liability provision of the Endorsement adds, but does not replace,

6

additional terms to the main policy. This is evident by portions of the Endorsement that state that specific language deletes and replaces portions of the main policy, and the absence of such specification in the relevant exclusions section of the Endorsement. (*Compare* ECF No. 14-3, PageID.267 "Watercraft Liability" (stating that a specific section of the main policy "is deleted and replaced by the following . . . .") *with id.*, PageID.268 (showing absence of deletion and replacement language as it pertains to coverage exclusions for bodily injury.))

In addition, Sammut is mistaken in his belief that the personal injury provision would apply to Brown's accident. "If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions." *Century Sur. Co. v. Charron*, 230 Mich. App. 79, 82, 583 N.W.2d 486, 488 (1998) (citing *Cavalier Mfg. Co. v. Employers Ins. Of Wausau (On Remand)*, 564 NW.2d 68 (1997)). "Personal injury," as defined by the Policy, does not apply here as it includes only injury arising out of false arrest, false detention or imprisonment, malicious prosecution, libel, slander, defamation of character, invasion of privacy, wrongful eviction or wrongful entry. (*Id.*, PageID.265.) On the other hand, what happened to Brown is clearly encompassed within the definition of bodily injury, meaning "bodily harm . . . including required care, loss of services and death that results." (*Id.*, PageID.218.) Because Brown's death was a "bodily injury" and not a "personal injury," as defined by the Policy, the coverage exclusions listed in section E, including the exclusion for "Business," must be honored. (*Id.*, PageID.238.) *See Auto–Owners Ins. Co.*, 489 N.W.2d at 434 ("Clear and specific exclusions must be given effect . . . . It is impossible to hold an insurance company liable for a risk it did not assume.")

7

### B. The Business Exclusion Exempts Depositors From Any Duty

The business exemption releases Depositors from its duty under the Policy to provide coverage or a defense for Sammut because Brown's bodily injury "ar[ose] out of or in connection with a 'business' . . . engaged in" by Sammut. (ECF No. 14-3, PageID.267.) "Business" is defined by the Policy as, among other things, "[a]ny . . . activity engaged in for money or other compensation," excluding certain activities which do not apply here. (*Id.*, PageID.218.) Sammut's arguments that he was not a member of Sammut Properties at the time or that he did not engage in cleaning property as a business venture are unpersuasive given this broad definition and Sammut's own testimony that he would receive fifty percent of the proceeds from the sale of the Property, and that this amount would increase by $10,000 if the Property was cleaned out pursuant to the addendum to the purchase agreement. (ECF No. 14-4, PageID.276; ECF No. 18-6.) As Sammut stated, he went to the Property to perform work that would lead to "$10,000 in my pocket." (ECF No. 14-4, PageID.294.) Because Sammut was engaged in cleaning the Property for a direct financial benefit, even if he was not a member of Sammut Properties LLC, his homeowners' insurance provider owes him no coverage or duty to defend in the Underlying Action.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff Depositors Insurance Company's Motion for Summary Judgment (ECF No. 14) and **DENIES** Defendant William Sammut's Motion for Summary Judgment (ECF No. 18).

**SO ORDERED**.

Dated: August 28, 2023

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

8

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 28, 2023, by electronic and/or ordinary mail.

          s/ Lisa Bartlett
          Case Manager